IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                         No. CR 05-1277 JC

GARFIELD FRANCIS,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion and Memorandum Brief to Suppress Evidence as a Result of Highway Checkpoint Stop of the Defendant's Tractor Trailer, filed November 1, 2005 (*Doc. 32*) ("Motion"). Having considered the Motion, the parties' submissions, the relevant authority, and being otherwise fully advised, I find the Motion not well-taken and is denied.

**I.    Background**

The key operative facts in this matter are undisputed. On May 24, 2005, Inspector Kenneth Homer of the New Mexico Motor Transportation Division (NMMTD) was working the port booth at the Gallup port of entry in Gallup, New Mexico. Homer was using the Inspection Selection System (ISS) to identify companies requiring inspections. A tractor trailer truck with Georgia license plates approached the inspection booth and Homer requested the driver's New Mexico Identification Permit. The driver, Defendant Garfield Francis, handed Homer the permit. Homer ran the

Department of Transportation (DOT) numbers through the ISS program and was notified that the company was new and an inspection of the tractor trailer was required.

Homer requested the driver enter the port and bring his paperwork with him for an inspection. Homer began a "level two" inspection involving both the paperwork and the vehicle at approximately 10:20 a.m. Upon completing the paperwork portion of the inspection, Homer asked the driver to accompany him to the parking lot for the vehicle inspection. After checking lights, tires, and vehicle equipment in a "walk-around" inspection, Homer asked Francis to open the trailer for a standard load securement check.

Francis removed the seal and opened the trailer doors. Homer observed the load, which consisted of two shrink wrapped pallets of large cardboard crates and cardboard boxes with smaller cardboard boxes loose on top. Homer asked Francis why the loose boxes were on top and Francis replied that he had to remove part of the load in Chino, California and then reload it. Homer climbed into the trailer and smelled what he believed to be raw marijuana. Homer then moved some of the loose boxes and found a piece of green shrink wrap with a yellow paste on it. The paste appeared to be mustard mixed with pepper. Homer climbed up to observe the larger pallets and found additional loose boxes behind the pallets. Toward the front, on the left side of the trailer, Homer saw the top of a bundle wrapped in green shrink wrap. Homer observed the odor of marijuana growing stronger. Based on his training and experience, Homer believed the trailer could be carrying contraband.

Homer explained to Sergeant Armstrong what he found. A narcotics canine was then requested. The canine alerted to the vehicle. Citations for commercial motor vehicle regulation violations were issued to Francis.

Motor Transportation Officer Brown arrived, explained the canine alert to Francis, and

requested consent to search the trailer for controlled substances. Francis refused to give consent. Officer Brown then wrote, requested and received a written search warrant from the 11th Judicial Court at approximately 2:10 p.m. Officer Brown advised Francis that a warrant had been issued and further advised Francis of his *Miranda* warnings. Brown asked Francis if he would be willing to answer questions and Francis declined and requested an attorney.

The warrant was executed at approximately 2:25 p.m. The search of the trailer produced 71 bundles of a green leafy substance, weighing 1,588 pounds (720 kilograms), which was field tested by Officer Smid. The test was positive for marijuana.

## II.    Discussion

The Supreme Court had held that warrantless searches of pervasively regulated businesses will be upheld if reasonable. *Burger v. United States*, 482 U.S. 691, 716 (1987). The Tenth Circuit has held that "commercial trucking is an industry closely regulated by federal and state governments." *U.S. v. Vasquez-Castillo*, 258 F.3d 1207, 1210 (10th Cir. 2001) (holding that an inspector's presence inside a trailer was within the scope of an administrative inspection) (citing *U.S. v. Burch*, 153 F.3d 1140, 1141-43 (10th Cir. 1998)). The *Burger* court held that a warrantless search in the context of a pervasively regulated industry is reasonable when (1) there is a substantial state interest behind the regulatory scheme; (2) the search is necessary to further that scheme; and (3) the statutes authorizing such a search constitute adequate substitute for the warrant requirement by providing notice to the business owners and *limiting the discretion* of the inspectors. *Id.* at 702 (emphasis added).

The Tenth Circuit has also held that safety inspections of commercial carriers satisfy the first prong of the *Burger* test, that the state clearly has a substantial interest in the regulation to protect public safety on the highways to satisfy prong two, and that the [relevant type of] regulatory scheme

satisfies the third prong. *Vasquez-Castillo* at 1211, 12 (citing *V-1 Oil v. Means*, 94 F.3d 1420, 1426 (10th Cir. 1996), *U.S. v. Fort*, 248 F.3d 475, 480 (5th Cir. 2001), and *U.S. v. Dominguez-Prieto*, 923 F.2d 464, 468 (6th Cir. 1991)). It is on the third prong of the *Burger* analysis that Francis focuses his challenge. Specifically, Francis contends that "despite the fact that administrative regulations provide guidance to NMMTD officers in conducting safety inspections of commercial motor carriers, Officer Homer did not adhere to these guidelines in conducting the instant seizure." Mot. at 7. However, the *Vasquez-Castillo* court stated "[w]e find that the regulatory scheme governing commercial carriers provides adequate notice to owners and operators of commercial carriers that their property will be subject to periodic inspections and adequately limits the discretion of inspectors in place and scope."). *Vasquez-Castillo*, 258 F.3d at 1211. That said, the focus of Francis' challenge is not the scheme itself, but the allegedly "standardless and unconstrained discretion" with which Francis contends Homer conducted the administrative investigation, indicating that administrative inspection for safety was just a "ruse." Mot. at 11, 23. In support of this contention, Francis engages in rather extensive, though unconvincing, analysis of Homer's inspection in his attempt to show that Homer's true purpose was not to ensure safety, but was instead wholly an effort to uncover criminal activity. In support of his contention, Francis references a "friendly rivalry" between the officers at the Gallup port of entry and another New Mexico port of entry in which the two ports compete to determine who can uncover the most narcotics. Mot at 17. *See also* Mot., Ex. B.

Under *Burger*, however, a proper regulatory search is not rendered illegal by virtue of the fact that the inspecting officer has the power to arrest for violations outside of those created by the regulatory scheme. *U.S. v. Johnson*, 408 F.3d 1313, 1320 (10th Cir. 2005) (citing *Burger v. U.S.*, 482 U.S. at 712). On the facts before it, the Court determines that a proper arrest for violations

outside of those created by the regulatory scheme is precisely what occurred here. Certainly Defendant would not urge the Court to determine, instead, that inspector Homer should have ignored the smell of raw marijuana emanating from the trailer because it did not directly relate to the administrative purpose behind the safety inspection. *See U.S. v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991) ("[T]he odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.").

The Court finds the regulatory search was performed in a manner consistent with the regulations and the overall purpose of the New Mexico regulatory scheme. During the course of the lawful administrative inspection, probable cause arose and a warrant was obtained. Nothing in this matrix of operative facts can be accurately said to have worked a violation of Francis' constitutional rights.

## III.    Conclusion

In summary, the Court finds the Fourth Amendment was not offended by the reasonable, administrative search of the tractor trailer belonging to Defendant Francis. Once Homer identified what he believed to be the odor of raw marijuana, he had probable cause to detain Francis and seek a warrant. Pursuant to the warrant, the further search of the trailer and its contents was proper, as was seizure of the 720 kilograms of marijuana. Accordingly, the Motion is DENIED.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion and Memorandum Brief to Suppress Evidence as a Result of Highway Checkpoint Stop of the Defendant's Tractor Trailer, filed November 1, 2005 (*Doc. 32*) is DENIED.

Dated March 29, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

> Rhonda Backinoff, AUSA
> Albuquerque, New Mexico

Counsel for Defendant:

> Michael A. Keefe, AFPD
> Albuquerque, New Mexico